40176. BALDWIN et al. v. FIRST TENNESSEE BANK.

GREGORY, Justice.

On September 3, 1968 Melvin Baldwin executed a Will leaving the bulk of his estate to his two children, Elizabeth and Stephen. Stephen was the father of appellants. Under the terms of this Will, if Stephen Baldwin predeceased his father, his share would be held in trust for Stephen's wife, Wilson, for life, the remainder to go to the couple's three children. On May 30, 1979 Stephen Baldwin died in a plane crash at age 39.[1] On June 6, 1979 Melvin Baldwin executed a Codicil to his Will, leaving the vast majority of his estate to his daughter, Elizabeth.[2]

Melvin Baldwin died on February 22, 1982. Appellee offered the Will and Codicil for probate. Appellants filed a caveat to the probate of the Codicil, alleging that Melvin Baldwin lacked testamentary capacity at the time he executed the Codicil. The probate court denied the caveat, finding that the testator was "of sound and disposing mind" when he executed the Codicil and did so "freely and voluntarily with full knowledge of its content." On appeal to the superior court for a de novo investigation, appellee's motion for summary judgment was granted. See OCGA § 5-3-29 (Code Ann. § 6-501).

The issue on this appeal is limited to whether the affidavit of Dr. Robert Clancy, submitted by appellants in opposition to the motion for summary judgment, is sufficient to create an issue of fact as to testamentary capacity and, therefore, defeat the motion for summary judgment. OCGA § 9-11-56 (c) (Code Ann. § 81A-156).

In his affidavit Dr. Clancy, a neurologist who never treated or met the testator, stated he had examined the testator's medical records, including those of July 26, 1978, and from these records determined the testator "suffered from serious pre-existing neurological damage as well as from multiple other medical prob-

---

[1] At the time of his death Stephen and Wilson Baldwin were divorced. Stephen had remarried.

[2] Appellants argue that the effect of the 1979 Codicil is to "disinherit" them.

lems, and that he consumed a variety of medications which alone or in combination can disturb mood, judgment, memory and mental function." Based on this diagnosis Dr. Clancy stated his opinion "that, considering Mr. Baldwin's medical and neurological abnormalities and assuming that the tragic death of his son caused him great psychological pain, stress and grief, it is highly probable during the time period following his son's death that Melvin James Baldwin was not mentally competent to sign a Will, and that he was not able to exercise clear and informed judgment concerning the disposition of his estate."

We find that this affidavit is sufficient to create a genuine conflict in the evidence regarding the state of the testator's mind at the time he signed the Codicil from which inferences could be drawn by a jury establishing a lack of the requisite testamentary capacity. *Mallis v. Miltiades,* 241 Ga. 404 (245 SE2d 655) (1978); OCGA § 9-11-56 (c) (Code Ann. § 81A-156); OCGA § 53-2-20 (Code Ann. § 113-201); OCGA § 53-2-21 (b) (Code Ann. § 113-202).

Appellee argues that Dr. Clancy's affidavit fails to meet the requirements of OCGA § 9-11-56 (e) (Code Ann. § 81A-156),[3] and should not be considered in determining whether summary judgment was properly granted. However, "objections to expert opinion affidavits will not be entertained for the first time on appeal where such affidavits were considered by the trial judge, without objection, in ruling on the motion for summary judgment." *Bell v. Sellers,* 248 Ga. 424, 426 (283 SE2d 877) (1981); *Chapman v. McClelland,* 248 Ga. 725 (286 SE2d 290) (1982).

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 19, 1983 —
REHEARING DENIED NOVEMBER 1, 1983.

*Harriss, Hartman, Aaron & Townley, Robert J. Harriss, Alston & Bird, G. Conley Ingram, Robert G. Edge, R. Wayne Thorpe,* for appellants.

*Spears, Moore, Rebman & Williams, Fred H. Moore, Fletcher & Womack, Norman S. Fletcher,* for appellee.

---

[3] This section provides, in part, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."